The opinion, of the court was delivered by
Watkins, J.
The contract which constitutes the principal subject matter of this suit was executed on the 16th and recorded in the parish of Lafayette on the 20th of February, 1886, and its stipulations, in substance, are as follows, viz;
The plaintiff furnished his plantation with all of the improvements and ameliorations thereon, consisting of barns, cabins, fences, etc.; one pulverizer, two mowing machines, one self-binder machine, one road masher, one sulky plow, one sugar mill,'three mules, worth $375 — Fly, Dolly and Queen; also live stock, consisting in cattle, sheep, etc., worth $4165; four bulls and thirteen head of cattle from Kentucky not being included in the agreement.
*902 The defendant furnished his time and undivided attention to the-supervision and management of said plantation, and to the care and protection of the stock.
Then follows the consideration of the agreement, to-wit:
“ In consideration whereof said Kee is allowed, in lieu of salary, the profit arising from the cultivation of the yearly crops, and it is, agreed that Kee shall have one-half interest in the increase in the stock, as hereinabove mentioned, in further consideration of his. services, Kee binding and obligating himself to pay and satisfy all taxes and real charges due and arising and becoming due during the existence of this contract and agreement. It being further understood that this agreement is not intended to confer upon Kee any authority except as supervisor and manager of the property, without any right-to sell or dispose of anything, and with only a half interest in the-increase of the stock.”
This agreement fixes no period for its duration, and, although styled a partnership, is a contract of hire of labor, the laborer — the defendant — to receive a “ half interest in the increase in the stock ”' and “ the profit of the cultivation of the yearly crops ” “in lieu of' salary.”
This agreement remained in force until the latter part of December-of 1889, when the plaintiff sought to terminate it and lease the plantation to another, and thereupon a difference arose between the contracting parties. This suit ensued, and the real and personal, effects claimed by Long were sequestered, and a demand for damages against Kee was urged; and Kee in turn denied the plaintiff’s, right to possession and re-entry upon the premises, claimed the ownership of .much of the personal property and stock that had been seized, and claimed a large amount of damages, vindictive and compensatory.
In effect, the judgment was as follows, viz :
1. That the sequestration be dissolved, and all the property sequestered returned to the defendant, including the plantation and the-, improvements thereon, the cattle and the farming implements mentioned in the contract of 1886, excepting one-half of the increase of' the common cattle, the fence, buildings, stock, mules, horses, blacksmith’s shop and tools, oats, rice straw, sweet potatoes, cow peas, bell, salt, sulphur, nails, skiff, chickens, geese, rice, hen house and three foot boards, which are decreed to belong to the defendant;. *903 the same to be used and possessed by the defendant, as provided in the agreement of February, 1886, Until the 1st of January, 1891, when the same shall be delivered to the plaintiff as the owner or accounted for, and that the defendant’s right to claim one-half of the increase of the cattle, according to said contract of 1886 be recognized.
2. It condemns the plaintiff to restore to the defendant, as owner, the property excepted in the preceding paragraph, or pay the value thereof, which is fixed at $3682.50.
•3. It further orders that plaintiff restore all other property of the defendant which remains on the premises, although not actually sequestered.
4. It recognizes defendant’s ownership of two houses and two cabins, and twenty-five arpents of wire fence, and entitles him to remove same on or before the 1st of January, 1891, unless plaintiff elects to pay for the same at the valuation of $600.
5. It declares and decrees that if, for any cause, said plantation and property can not be “redelivered to the defendant, then and in that event, the plaintiff shall pay the sum of $1000 for the use of the place and the detention of the plantation, stock, etc., and the further sum of $1400, as the value of 140 head of cattle as his one -half of the increase thereof.
6. It is further decreed that in the event' of the mules, horses, agricultural implements, etc., aggregating '$3632.50 in value, and particularized in paragraph one, supi'a, being lost, or cannot, for any reason, be restored to the defendant, the plaintiff shall pay same to the defendant.
7. It fully reserves the right of defendant to sue the plaintiff on his sequestration bond for any property not faithfully delivered, and for any damage done thereto, and also to sue the plaintiff for any damages he may have sustained by reason of an interruption of his business, and for attorney’s fees.
We have been at the pains to detail and particularize the items of and amounts awarded by the judgment appealed from, as the best means of making a concise statement of the issues before us, the most clearly defined idea which it conveys to our minds being the great care with which the interest of the defendant is safeguarded throughout.
It appears that the amount allowed the defendant, as the value of' his sequestered property in ease it should not be returned, is less *904 than the amount claimed by about $5000. The estimated value of the anticipated crop for the year 1890 of $4940 is disallowed. The $5000 exemplary damages are likewise disallowed. In his answer to plaintiff’s appeal, the defendant demands that the judgment upon his reconventional demand be increased by those amounts, and thus conformed to his prayer.
I.
Under this synoptical statement of the case, the first question to be determined is the right of plaintiff to terminate the contract, as he attempted to do, by leasing the plantation-to another person and putting him in possession thereof at the commencement of the year 1889. In his petition he charges that Kee was unmindful of his duties as manager, and failed to give proper care and attention to the cattle and stock, and permitted his plantation to be devastated and to run to waste, notwithstanding he had from time to time furnished him- with large sums of money, for the disbursement of which he has given no satisfactory account. He futher charges that the defendant has disposed of poi’tions of the movable property which belonged to him in violation of the express terms of his agreement, and has admitted that fact to him, though he has not accounted for the proceeds thereof. He further charges that the defendant has grown arbitrary, arrogant and overbearing, and in his conduct toward him as proprietor he has gz’own disrespectful and insubordinate to his authority and that of his agents and representatives, and that he threatened maltreatment and bodily harm to the person sent to take the place in charge preparatory to the completion of the contract of lease, of which he was duly notified, and in due season, and which contract was also duly recorded.
Hence he discharged defendant and gave him due and timely notice to vacate the premises; but he peremptorily refused to do so. He therefore charges and fears that the said Kee may make use of his possession to further dilapidate and waste his plantation, and is therefore entitled to a sequestration and damages. On his furnishing a forthcoming bond for $5000, the plaintiff entered into possession of the property sequestered, personal and real, in January, 1890, and so retains it now.
On the contrary, the defendant alleges that the institution of the suit and, the seizure under the sequestration were a deliberate and wanton violation of the agreement of 1886, and without notice of *905 any kind to him, or his having made any previous demand, or complaint of his management or conduct of the plantation and business, or of any dereliction of duty on his part.
The defendant admits that in December, 1889, he received a notification from the plaintiff to the effect that he had given an option to one Von Kalckstein, on the place, and that the latter called on him soon after and demanded possession of the place and the movable property on the place, but that “he refused to so deliver the place until he could effect a settlement with plaintiff under the contract.”
He further avers that soon afterward Long came to Louisiana, and during the course of an interview with him, he (Kee) stated “that if he (plaintiff) wished to dissolve the contract, and put some one else on the place, that, though it was late to make other arrangements, he (defendant) would vacate as soon as a settlement could be effected between them.”
He further “admits having made out á list of the property on said place, including both plaintiff’s and defendant’s, but avers that same was made under the distinct and express understanding that said place was to sell for $50,000, and that plaintiff was to settle with defendant for his property as herein claimed, and before he should deliver the place.”
As applicable to these various averments, counter averments and admissions, the introduction of evidence took a wide range, and, as is quite usual in such cases, there is a great divergence of opinion amongst the witnesses pro et con as to the exact situation of affairs in December, 1889, and as to the management and administration of plaintiff’s plantation and 'property by the defendant antecedent thereto under the contract. But it is clear that from appearances, as well as from representations that were made to him, it was altogether' unsatisfactory to the plaintiff; and as there was no fixed limit for the duration of the cofitract and the end of the year was approaching, we are of the opinion that he was at liberty to put an end to their engagement, retake his plantation and property and lease them to another. It seems quite unreasonable that defendant should have entertained a different opinion. Whether there was anything due him on settlement of accounts with plaintiff or not, that could not form a just ground for defendant’s resistance to his de *906 mands. For a settlement he had adequate remedy by procedure against plaintiff or his property in the parish of his own domicil.
We are of opinion that plaintiff had just grounds for his sequestration, and that the judge a quo erred in quashing it and decreeing the defendant entitled to be restored to possession, thus prorogueing the contract for the year 1890.
II.
Having arrived at the conclusion that the plaintiff is entitled to. possession of the plantation and other property, two alterations, must be made in the judgment, viz:
1. There must be eliminated therefrom the sum of $1000 allowed for the use and detention of the plantation stock, etc., as stipulated in item five of the summarized statement of the judgment ante.
2-. The reservation contained in item seven thereof must be disallowed. In addition to these alterations, which are the immediate-result of the said conclusion, there are others which must be disallowed and rejected, .as wé will demonstrate in subsequent paragraphs of this opinion.
III.
In the contract there is a clause, quoted supra, to the effect that, Kee stipulated and agreed “to pay and satisfy all taxes and real charges due and arising and becoming due during the existence of the contract and agreement. ’ ’
It is evident that under that stipulation Long was not bound for, the payment of taxes and repairs, or other “real charges on the property.” In the very nature of things the amount and character of the “real charges” that were to be or might be placed on the plaintiff’s property were optional with the defendant under the contract, and whether same consisted of buildings, fences, ditches or-other plantation improvements. But it was the use of such ameliorations only that defendant had the right to enjoy during the continuation of the contract, and the ownership thereof was to be in plaintiff as the proprietor of the soil. For they became eo instanti. attached to the land, and formed a part of it as immovables by destination. Heneo the defendant is entitled to no compensation for-their construction, and he has no right to take them away. If he was entitled to either, the quoted clause of the contract would be nugatory and void. Therefore all claims of this character must be-. *907 eliminated from the judgment and bill of particulars; and among the number the following are enumerated and specifically disallowed, viz:
Addition to gin house...................................................................................................$200
Four tenement houses..................................................................................................540
One chicleen house...................................................................................... 20
Building one large harn............................................................................................... 200
Getting out and hewing posts.............................................. 200
One cotton house........................................................................................................... ‘ 40
On e corn crib.......:........................................................................... 45
Xine corn cribs and cabins............................................................................................180
Boring ten wells, etc.......................................................................................................100
Wheels and buckets', etc................................................................................................ 25
Setting up sugar* mill................................................................................................... 50
Two arpents of seed cane.......................................................................................... 50
Aggregating.........................................................................................................$1650
IY.
The next question of importance for our determination, is the true meaning and import of the clause in the contract, viz: “and Kee shall have one-half interest in the increase in the stock,” etc.
It seems that the interest of Kee, under such a contract, ought to be and is very closely assimilated to an usufruct under the principles of the code. On this principle the increase in stock should be thus ascertained, viz: from the number of cattle on hand, at the incipiency of the engagement, those purchased subsequently, and the increase by births, deduct the diminution by death, and loss from other causes, and make an equal division of the net increase, one-half to each of the parties.
Certainly the proprietor is entitled, like the usufructuary, to have set apart and returned to him, at the termination of the agreement, a number of cattle, etc., equal to that he invested originally, such as have died in the meanwhile being replaced from the new born cattle; and it is only the net increase that is to be divided between him and his manager or superintendent.
The settlement to be made in such case, is to be assimilated to the settlement of a partnership account, amongst partners inter se, or that of a community. And this is the rule in such matters. Wimbush vs. Gray, 10 R. 46; Succession of "Waterer, 25 An. 211; R. C. G. 593.
Now, in this case, the testimony of the defendant is, that at the time of making the contract of 1886, he did not count the cattle and could not state the number. He took all the cattle on the the place and was to have an interest in the increase. Of the calves that were branded in 1886,1887 and 1888, he was not able to say how many survive.
*908 It is quite unnecessary for us to ’ examine • or discuss any additional testimony on this branch of the case, as it is manifest that under this admission no “ settlement ” can be made at this time, for the parties, on the theory we have adopted; and it will, therefore, be necessary that it must be remanded to the court a qua to be examined and dealt with according to law.
Y.
Erom what appears from the first paragraph of the summarized statement of the judgment supra, and a comparison made with the bill of particulars appended to the defendant’s answer, the amount and value of the personal property for which the plaintiff was held bound to account is left in just as great doubt and uncertainty as defendant’s interest in the “increase in cattle,” etc. The judgment, in general terms, requires certain property to be restored to the defendant and decrees the defendant to be the owner of certain articles and items of property — also in general terms — such as “ stock, mules, horses, oats, rice straw, sweet potatoes, cow peas, sulphur, salt, rice, nails, chickens,” and divers other things; and for the whole fixes the price at the “ lump sum ” of $3632.50. It would be practically impossible for the plaintiff to have complied with the judgment of the court otherwise than by paying this valuation placed on the property, for he could not have exercised the right of restitutio ad integrum to which he was clearly entitled.
YI.
After a thorough examination of this case in all its bearings, our conclusion is that the judgment in the premises, in so far as we can make it determinate, should be in favor of the plaintiff; and, first announcing the various precepts set out in the preceding part of this opinion as our conclusions in regard to the law governing this case, and the principles on which the settlement between the parties must proceed, we think the judgment should rather be reversed and revised than amended.
It is therefore adjudged and decreed that the judgment appealed from be reversed in toto; and it is now ordered and decreed that the demands of the plaintiff be sustained to the extent of recognizing his right to put an end to the contract between him and the defendant, as of date December 31, 1889, and retake possession of his *909 plantation and its appurtenances and personal property; and to tbe further extent of recognizing and enforcing Ms sequestration, reserving fully the mutual rights of the parties to litigate their respective claims of ownership to any and all personal property in the premises..
It is further ordered and decreed that each and all of the demands of both parties for the damages claimed respectively, in the petition of the one, and the answer of the other, be rejected and disallowed, with a reservation to each of the right to make claim on another trial for specific damage done to any part of the property of either by the other, through any tort, trespass or force.
It is further ordered and decreed that all other questions pro et eon be remanded to the court a qua for trial and determination according to law and the views herein expressed, the defendant and appellee to pay costs of appeal, and those of the lower court to await final judgment therein.